16141

STEPHENS v. STEPHENS

(50 S. E. (2d) 577)

Messrs. *C. T. Graydon,* of Columbia and *Allen Murchison,* of Camden, *for Appellant,* cite:

528

*Messrs J. Carlisle Oxner, Henry H. Edens* and *Henry Hammer,* of Columbia, *for Respondent,*

The opinion of Judge E. H. Henderson follows:

This case comes before me upon exceptions by both parties to the report of the Master.

The plaintiff and the defendant are husband and wife, and the cause of action, as determined in an order of his Honor, Judge Gaston, is one in which the plaintiff claims that she and her husband were copartners, and in which she asks for a partnership accounting and settlement.

The principal issue in the case is as to whether or not the evidence shows that Mr. and Mrs. Stephens were partners in several grocery businesses. The defendant contends that they were not partners. The Master, after taking voluminous testimony, held that there was a partnership between the parties. He held that they worked together over a long period of years, and that, while there was no written agreement, their actions disclosed a partnership, and that the plaintiff is entitled to receive one-half of the earnings of the partnership and one-half of the property which they thus accumulated through their joint enterprise. He held that the defendant had in his possession $18,032.00 of property which was derived from their joint efforts; that she had already received $7,200.00; that this would make a joint estate of $25,232.00; that the plaintiff would be entitled to

one-half of this, or $12,616.00; and that since she has already received $7,200.00, she is entitled to a balance of $5,416.00.

I have carefully studied the testimony in this case. The plaintiff and the defendant were married in 1915, and they separated, as husband and wife, in 1945. No children were born to the marriage. At the time they were married, and for a short time after that, the plaintiff was employed in the Olympia Mills, and Mr. Stephens had a position with the Southern Railway Company. Shortly after their marriage a home was purchased, title to which was placed in the name of Mrs. Stephens. Thereafter this home was sold and another home was purchased, and from time to time, largely from the profits of the stores, other homes, businesses, and real estate were purchased. It appears from the testimony that the plaintiff had a large part of the management of the grocery stores. Mr. Stephens was in bad health, and quite often was unable to work, and was obliged to make at least eight trips to Hot Springs for treatment. They both shared in the profits, and paid debts out of the partnership funds. At one time they had a joint bank account upon which either party was entitled to draw, and the estate was accumulated largely by reason of the combined efforts and labor of both of the parties in the grocery businesses, the arrangements between them being terminated because of domestic difficulties.

It is my opinion that the Master correctly held that the plaintiff and defendant were engaged as partners in the grocery store businesses, and that the plaintiff is entitled to one-half of the property which was accumulated by their joint efforts in the operation of these grocery stores.

One of the most important tests as to the existence of a partnership is the intention of the parties. However, it is stated at 20 R. C. L. page 831, that "if the partners intend to and do enter into such a contract as in the eye of the law constitutes a partnership, they thereby become partners whether they are designated as such or not in

the contract. And when all of the conditions exist which by law create a legal relationship, the effects flowing legally from such relation follow whether the parties foresaw and intended them or not."

We are told at 47 C. J. 640, that "while it is difficult, and it has been said to be impossible, to formulate an exact and precise definition of a partnership, none seems more accurate and comprehensive than that of Chancellor Kent, as follows: 'A contract of one or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profits and share the loss, in certain proportions.'"

"Partnership is a relation arising out of contract, and a partnership *inter sese* arises only out of the contract, of the parties as expressed in their agreement, or implied from their dealings with each other and others." 47 C. J. 648.

"To constitute an association of two or more persons a copartnership it is obvious, from the usual definition of the relationship, that the parties involved must have undertaken to carry on some sort of business together and to share in the profits thereof, and this communion of interest in an enterprise and its results is an essential element of a partnership and requisite to the existence of the relationship as between the parties thereto." 47 C. J. 662.

"In conformity with the general rules and requisites of the law of partnership hereinbefore considered, it is well settled that where the parties to a contract, by their acts, conduct, or agreement show that they intended to combine their property, labor, skill and experience, or some of these elements on one side and some on the other, to carry on, as principals or co-owners, a common business, trade, or venture as a commercial enterprise, and to share, either expressly or by implication, the profits and losses or

expenses that may be incurred, such parties are partners."
47 C. J. 675.

The case of *Providence Machine Company v. Browning,*
72 S. C. 424, 52 S. E. 117, shows that a partnership agree-
ment may be implied as well as expressed.

Where there is no express contract, either written
or verbal, there are a number of tests which the
Courts follow in determining whether or not a part-
nership has been established. One of these is the right to
control the management of the business. See 40 Amer. Juris-
prudence, Section 58. Another test is the sharing of profits
and losses. In the case of *Chapman v. Lipscomb,* 18 S. C.
222, 233, the Supreme Court said that "the true test of a
copartnership is that there must be a communion of profits
and losses." At 40 Amer. Jurisprudence, page 51, it is
stated that "the participation in profits is undoubtedly *prima
facie* evidence of a partnership * * * and in the ab-
sence of contradictory evidence will control." Also at 40
Amer. Jurisprudence, page 165, we learn that "a factor,
which, in addition to sharing profits, is used as a test for
distinguishing between partnership and employment in
whether the party rendering the service has equal rights in
the management and conduct of the business * * *
that the party rendering the service has rights of managing
and the determining the policies of the enterprise equal with
those of the other parties or partners tends to show a part-
nership."

It seems to me that the evidence in this case, as was held
by the Master, fulfills these accepted tests for establishing
the fact of partnership.

I think that the preponderance of the evidence shows that
the accumulated estate resulted from the combined capital
and labor of both parties in the grocery stores. There can
be no doubt of the fact that the plaintiff did exercise a very
wide degree of control and management of the several mer-

cantile businesses which were conducted. She often made the purchases and paid for the merchandise. She was regarded by some of the wholesalers as the owner of the business. Both of the parties benefited from the profits. While it is true that the plaintiff testified that they had no partnership agreement in writing, yet we find at 48 Amer. Jurisprudence, section 43, this principle: "It is important to note that it is not of the essence of a partnership that the parties to it should have known that their contract in law created a partnership. If the parties intend to and do enter into such a contract as in the eye of the law constitutes a partnership, they thereby become partners whether they are designated as such or not."

Also in the case of *Price v. Middleton & Ravenel, 75 S. C. 105, 55 S. E. 156,* 158, it is stated by our Supreme Court that "when the contract provides for all the incidents of partnership, contribution to the common property, sharing of profits, mutual agency in the conduct of the business, it will be held to create a partnership, though there is no expressed intention to that effect, and the parties may have had no intention of incurring the liabilities of partners; and if the contract leaves any doubt on these points, from omission or otherwise, the doubt may be solved and the intention gathered from the course of dealing of the parties with each other and with the public."

So in this case I am of the opinion that the evidence discloses the elements necessary to establish an implied partnership agreement, that is, contribution of common property, sharing of profits, and mutual management in the conduct of the various mercantile establishments, and I think that it follows that the plaintiff will be entitled to one-half of the profits that were accumulated as a result of the partnership.

I do not think that the plaintiff and the defendant were partners in the automobile business, in the restaurant, in the wash racks, or in the peanut and coffee enterprises at Spar-

tanburg, but believe that the partnership was confined to the various grocery stores in which Mrs. Stephens actually gave her time. In my opinion the evidence shows that the property which was accumulated and set forth in the Master's report resulted from the earnings of the grocery stores. It is very clear that the Spartanburg venture resulted in a loss. The restaurant was not profitable, and I am unable to give full credence to the testimony of the defendant as to his profits from the automobile business. In this connection it should always be remembered that it is the duty of a husband to support his wife, and it seems to me the figures and valuations found by the Master were quite conservative, as embracing the profits and accumulated assets derived only from the grocery store businesses and the sale and exchange of real estate which was bought with profits from the grocery stores.

It is to be noted that the relationship of husband and wife does not preclude the existence of a partnership, where the other facts in evidence meet the tests and establish the existence of an implied partnership between the parties. See *Burwell v. South Carolina Tax Commission,* 130 S. C. 99, 126 S. E. 29, 38 A. L. R. 1256 Without doubt, the effect of the provisions of the constitution of 1895, Article 17, section 9, relative to married women, was to confer upon a married woman power to contract, either expressly or impliedly, with any person including her husband. It seems clear, therefore, that a married woman may enter into a partnership agreement with her husband, and in determining the existence of a partnership between husband and wife, the general rule governing the formation of partnership should apply, although in such case the evidence of the partnership should be very clearly proven. It is stated at 41 C. J. S. Husband and Wife, § 129, page 602, that "The existence of a partnership between husband and wife ordinarily is determined by the application of the general rules governing the formation of partnerships."

"In determining whether husband and wife have become partners, general rules governing the creation and existence of partnerships ordinarily apply, although acts and circumstances occurring between husband and wife do not have the significance, as respects the establishment of a partnership relation, which they would have if they occurred between strangers." 41 C. J. S., Husband and Wife, § 129, page 602.

The bare relationship of husband and wife does not of itself establish a partnership. Even if a wife renders some service at a husband's place of business that, of course, would not create a partnership, but such services would be regarded as having been rendered gratuitously for the family benefit. And so in this case, the fact that Mrs. Stephens assisted somewhat at the restaurant and at the wash racks, would not, in my opinion, render her a partner in those businesses, nor would the fact that she advanced certain moneys to her husband, when he undertook the Spartanburg enterprise, make her a partner in that venture. The facts here, as to the grocery store businesses, however, are quite different. In those enterprises Mrs. Stephens gave substantially her full time and, as we have seen above, exercised a large measure of the management of those businesses.

It is also to be noted that property bought with partnership funds in the name of a single partner belongs to the partnership. At 40 Amer. Jurisprudence, page 199, it is stated that "the fact that the land has been purchased with firm assets has been regarded as raising a presumption that it was intended to form part of the partnership property, * * * although the legal title may be in the name of individual parties."

Something was said in the arguments before me as to joint adventures, but I do not consider it necessary to go into any lengthy discussion as to the law on this subject, since our Supreme Court in the case of *Welling v. Crosland*, 129 S. C. 127, 123 S. E. 776, 781, said that

"practically the only difference between a 'joint adventure' and a 'partnership' is that a partnership is ordinarily for the transaction of a general business of a particular kind, while a joint adventure relates to a single transaction." This case does not involve a single transaction and, in my opinion, is a partnership, as to the grocery businesses rather than a joint adventure.

The Master in his report recommended that certain property, which stood in the name of both parties jointly, should be sold and the proceeds divided. Such a recommendation, in my opinion, is proper in this case. 40 Amer. Jurisprudence, page 361, says that "due to the fact that a Court of Equity is able to investigate complicated accounts, that the relationship of trust and confidence in one and another exists between partners, and the necessity of the discovery in partnership accounts, such settlement, including the division of the assets of the partnership among the partners, has always been one of the functions of a Court of Equity."

The complaint in the case prayed for a sale of this joint property, and the defendant states in his answer that he is "perfectly willing that said property be divided equitably and justly between the parties."

It is my opinion that all of the exceptions of the defendant should be overruled.

There are a number of exceptions by the plaintiff in which she contends that the Master should have found the joint property to amount to as much as $40,000.00, and that the stock of goods in the store was worth more than the Master found.

After a careful review of the testimony, as to the value of the various items of property, I am of the opinion that the Master has reached a correct decision on these points, and I think that the exceptions of the plaintiff should be overruled, as well as her exception as to interest since April,

1945. The Master's figures were no doubt based upon the earnings from the grocery stores and the investments made from such profits. He properly omitted the profits from the defendant's automobile sales.

It is accordingly ordered that all of the exceptions be, and they hereby are, overruled, and the report of the Master is confirmed.

It is further ordered, adjudged and decreed that the four acre tract of land in Kershaw County, with the building thereon and with the stock of goods there, and the lot and building in or near the City of Columbia, in Richland County, on the corner of Marshall and Broad Streets, fully described in paragraph 6 of the report of the Master, be sold by the Probate Judge, Ex Officio Master for Kershaw County, in front of the court house door at Camden, South Carolina, at public sale, after due advertisement, for cash, to the highest bidder, on sales day in July, 1947; that the Probate Judge, Ex Officio Master, execute a deed of conveyance to the purchaser; and that the proceeds of sale be equally divided between the plaintiff and the defendant, the court costs to be paid out of the one-half of said proceeds due to the defendant.

It is further ordered, adjudged and decreed that the defendant, Henry T. Stephens, within ten days after notice to him or to his attorney of the filing of this decree, shall pay to the plaintiff or her attorneys the sum of Three Thousand Six Hundred Sixty-six ($3,666.00) Dollars, the same being one-half of the value of the lot and building on Laurel Street, in the City of Columbia, the seventy-eight and three-fourths (78¾) acre tract of land in Richland County, on the old Winnsboro road, and the forty and one-half (40½) acre tract on the old Winnsboro road, in Richland County, all being fully described in the report of the Master in paragraph 5 of said report; and in the event the said amount is not so paid by the defendant within said time, then the Probate Judge, Ex Officio Master for Kershaw County, shall

execute and deliver to the plaintiff a deed of conveyance in fee simple for a one-half undivided interest in the said lot and tracts of land.

It is further ordered, adjudged and decreed that the plaintiff is entitled to one-half of the furniture located in the dwelling last occupied by the parties, as well as her personal belongings there, and the defendant is ordered to deliver them over to her upon her demand.

It is further ordered, adjudged and decreed that the plaintiff, Mary N. Stephens, have judgment against the defendant, Henry T. Stephens, for the sum of Seventeen Hundred Fifty ($1,750.00) Dollars.

It is further ordered that either party to this action may apply to the Court at the foot of this decree for a supplemental decree carrying into effect the decisions announced above.

November 5, 1948.

PER CURIAM.

The decree of his Honor, Judge E. H. Henderson, in this proceeding in equity has been carefully considered in the light of appellant's exceptions, brief and oral argument, and no error is found in the conclusions and judgment; nor does it appear that appellant was prejudiced by the consideration of incompetent or irrelevant evidence. The facts control the decision and the Master and the Court concurred in the findings. Study of the record is convincing that none of the findings is without evidentiary support or is contrary to the clear preponderance of the evidence, which is necessary for reversal. The exceptions are overruled and the decree is adopted as the judgment of this court; let it be published.

OXNER, J., did not participate.

BAKER, Chief Justice (concurring and dissenting).

I concur in the result of the decree of the Circuit Court to the extent that it applies to the ownership of the property located at Lugoff in Kershaw County, and to the grocery business conducted therein. Whether the relationship of the parties in regard to that property is characterized as a partnership or a joint ownership, or otherwise, the fact is that the property in which the business was conducted is in the joint names of the parties and that the business conducted therein was so conducted as to amount to a joint operation. At least there is testimony supporting that view of the matter, and appellant's counsel appear to concede this in their printed argument.

I dissent, however, from the affirmance of so much of the Circuit Court decree as undertakes to create a partnership ownership of the real estate which is in the name of the appellant. It is a dangerous thing to tamper with real estate titles on the basis of inferences from circumstances of a debatable character and upon verbal testimony that does not purport to create a trust.

To say that the real estate in the appellant's name is jointly owned by the respondent and the appellant is to disregard controlling circumstances disclosed by the record.

Of the various properties acquired by these parties some were put in the name of the appellant, some in the name of respondent, and some in the name of both parties as co-owners. This course of action extended over the whole period involved in the present litigation, and resulted from the claims of the respondent to participation in the fruits of the operations of the parties and from the dealings and arguments between them on the subject. It appears to me that the parties themselves undertook, as their operations progressed, to make division of their properties and other assets and that they thereby negatived any possible claim on the part of either against the other as to what their intentions were.

With respect to the personal assets, other than those at Lugoff, it does not appear to me that because the appellant and the respondent commingled the fruits of their separate and joint labors, and that because the appellant (according to the respondent) dominated the situation, a partnership or joint interest in such of the proceeds as got into the hands of the appellant was created. He demanded money from the businesses in which the respondent participated or which she conducted and she handed it over to him. There was no duress and no fraud. Only the normal relationship between husband and wife existed, with the situation of the husband in this case being at the most, domineering and grasping. But the respondent was not lacking in the assertion of her rights as she understood them, and, with one exception, was not without success in getting what she demanded in each transaction as her share of the property and earnings.

It is not without significance that these parties separated several times and that on none of these occasions did the respondent make the claims which are presented in this case. Nor does she even in her testimony assert the existence of a partnership relationship. She merely asserts her view or feeling that she should have a half interest in the family accumulations because of the marital relationship, and of the fact that she assisted her husband in making the accumulations.

It may well be that abstract justice demands that the fruits of the earnings of a married couple should be deemed community property. In a number of states the law has been so declared by constitutional and statutory enactments. I think that in the present case the Court has reached out into that realm of law and has thereby, in effect, made a fundamental change in the laws relating to property accumulated during the marital relationship.

It is not for this Court, it seems to me, to attempt to "'unscramble the eggs" when two thoroughly competent persons,

even though they be husband and wife, have themselves distributed the fruits of their earnings. In any event, at this late day in the affairs of the parties, with no claim that records have been maintained to establish the respondent's case, the most searching audit by a certified public accountant could not evolve even an approximately equitable statement of account upon which to determine where the equities of the situation lie.