**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Edgar Bruce Massey, Respondent,

v.

James Anthony Fanning; Danny Joseph Baker; Michael Kaminski; a/k/a Michael Kaminsky; and Republic Finance, LLC,

Of Whom James Anthony Fanning is the Appellant.

Appellate Case No. 2019-001968

———————

Appeal From York County
Teasa Kay Weaver, Master-in-Equity

———————

Opinion No. 2023-UP-060
Submitted November 1, 2022 – Filed February 15, 2023

———————

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

———————

James W. Boyd, of James W. Boyd Law Firm LLC, of Rock Hill, for Appellant.

John Martin Foster, of Rock Hill, for Respondent.

———————

**PER CURIAM:**  Edgar Massey brought this property dispute seeking (1) to quiet title and to partition two parcels of land (Parcel 1 and Parcel 2), (2) dissolution of his business partnership with James Fanning, and (3) an accounting of common expenses and rents received.  The master-in-equity concluded a partnership never existed and awarded a partition of the two parcels accompanied with an accounting of common expenses and rents.  Because we conclude the master's determination that a partnership never existed was error, we affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL HISTORY

Massey and Fanning each own a one-half interest in Parcel 1 and Parcel 2 pursuant to two deeds dated July 9, 1980, and June 15, 2006.  Parcel 1 consists of a single lot having thirteen mobile homes and a business building known as the "Rock Hill Paint and Body Clinic" used by Fanning (the Shop).  The mobile homes are not part of the realty and are owned and titled individually to either Massey or Fanning.  While Massey and Fanning do not share in the control or management of their individually owned mobile homes, they do share in the payment of the property taxes, water, common areas, and insurance for the Shop.  Parcel 2 contains a home divided into two apartments and an additional mobile home space.  Like the homes on Parcel 1, Massey and Fanning only share payment of property taxes, water, common areas, and insurance for the apartment building.

In October 1979, Massey and Fanning signed an agreement (the Agreement) regarding certain rights and restrictions associated with the control and use of Parcel 1.  The Agreement states Massey and Fanning "are no longer in business together, but desire to continue their partnership regarding the real estate and trailer park located [on Parcel 1] and desire to reduce their agreement to writing."  Among other terms, the Agreement restricted any sale or conveyance of Parcel 1 without consent of each party, waived the right to initiate and pursue a partition of the Parcel, and provided that each party would equally divide rents, profits, liabilities, maintenance, taxes, and insurance.

On May 6, 2016, Fanning, without Massey's consent, signed an agreement to rent the Shop and sell his one-half interest in Parcel 1.  Fanning was allegedly paid $10,000 ($6,000 deposit and $4,000 for one month of rent), but the sale never came to fruition.  Fanning also admitted to receiving other rent payments from the Shop and part of the apartment building.  Massey never received any portion of these rent payments.

Massey subsequently filed a complaint requesting to quiet title of the two Parcels, dissolution of the alleged partnership between Massey and Fanning created by the Agreement, partition of the two Parcels, and an accounting for expenses and profits Fanning had allegedly received.  The matter came before the master-in-equity in York County on December 4, 2018.

Massey first requested that title to Parcel 1 be quieted in his and Fanning's favor, thus barring any interests or claims by extraneous parties associated with Fanning's attempted sale of his one-half interest in Parcel 1.  The master held title to Parcel 1 was proven to be held entirely by Massey and Fanning, both owning an undivided one-half interest and, thus, no other party had an interest or claim to Parcel 1.  Massey then sought dissolution of the partnership allegedly created by the Agreement and partition of Parcels 1 and 2.[1]

The master found the Agreement never created a partnership.  Although the Agreement contained some language to support the creation of a partnership, such as the sharing of profits and losses and terms of how the real property or building would be controlled and managed, it lacked details regarding the control and management of the trailer park business.  Further, the master found the parties' general dealings with one another and the public did not align with the terms of the Agreement.  The master concluded Massey and Fanning simply divided the existing mobile home spaces to rent, split the fourteen spaces evenly, and thus ignored the terms of the Agreement and set up separate businesses rather than a partnership.  The master found it inequitable to prohibit partition of Parcel 1 as Fanning ignored the Agreement's terms by entering into contracts without Massey's consent and withheld rents.  Lastly, the master held Massey was entitled to an accounting regarding payment of common expenses on the properties and for an accounting of all rents.  Fanning filed a Rule 59(e), SCRCP, motion, which the master denied.  This appeal follows.

**ISSUE ON APPEAL**

Did the master err in finding the Agreement never created a partnership?

**STANDARD OF REVIEW**

"An action seeking dissolution of a partnership is one in equity." *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989).  Further, an

---

[1] Both parties agreed to partition Parcel 2.

action seeking partition is also equitable in nature.  *Zimmerman v. Marsh*, 365 S.C. 383, 386, 618 S.E.2d 898, 900 (2005).  "In an action in equity, tried by the judge alone, without a reference, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence."  *Mazloom v. Mazloom*, 382 S.C. 307, 316, 675 S.E.2d 746, 751 (Ct. App. 2009).

**LAW/ANALYSIS**

South Carolina law defines a partnership as "an association of two or more persons, to carry on as co-owners a business for profit."  S.C. Code Ann. § 33-41-210 (1976).  "Our courts have not settled on a precise, consistently applicable test for determining when a partnership exists."  28 S.C. Jur. *Partnerships and Joint Ventures* § 5 (2022).  "One of the most important tests as to the existence of a partnership is the intention of the parties."  *Stephens v. Stephens*, 213 S.C. 525, 530, 50 S.E.2d 577, 579 (1948); *see also* 28 S.C. Jur. *Partnerships and Joint Ventures* § 1 (2022) (stating South Carolina's definition of a partnership implies an intention to create a partnership relationship).

When determining the existence of a partnership, South Carolina courts traditionally look to three factors: (1) the sharing of profits and losses; (2) community of interest in capital or property; and (3) community of interest in control and management.  *Halbersberg v. Berry*, 302 S.C. 97, 101, 394 S.E.2d 7, 10 (Ct. App. 1990); *Stephens*, 213 S.C. at 532–33, 50 S.E.2d at 580.  However, if parties intend to enter into a contract purporting to establish a partnership and complete the requirements to do so, they become partners.  *Stephens*, 213 S.C. at 530–31, 50 S.E.2d at 579.  Akin to other contract interpretation questions, the primary concern of the court is to give effect to the intent of the parties; the best evidence of which is the contract's plain language.  *N. Am. Rescue Prods., Inc. v. Richardson*, 411 S.C. 371, 378, 769 S.E.2d 237, 240 (2015).  "If a contract's language is unambiguous, the plain language will determine the contract's force and effect."  *Id*.

> Not every contract to do something with another creates a partnership.  The mere existence of an instrument labeled a partnership contract, and its characterization of the signatories as partners, does not conclusively prove the existence of a partnership, nor is the name given the instrument a decisive factor.  The intention of the parties explained by the wording and substance of their agreement is paramount.  While a partnership may be

> formed by oral agreement, the best evidence of partnership consists of the parties' written agreement or contract.

28 S.C. Jur. *Partnerships and Joint Ventures* § 7 (2022). We find the master misapplied the requirements needed to form a partnership pursuant to an express partnership agreement. The master disregarded the Agreement's plain language, placing unnecessary weight on the lack of details in the Agreement regarding control and management of the business and Massey and Fanning's failure to equally share the profits. *See Halbersberg*, 302 S.C. at 101, 394 S.E.2d at 10 (providing that South Carolina courts traditionally look to three factors in determining the existence of a partnership: (1) the sharing of profits and losses; (2) community of interest in capital or property; and (3) community of interest in control and management); *N. Am. Rescue Prod., Inc.*, 411 S.C. at 378, 769 S.E.2d at 240 ("The primary concern of the court interpreting a contract is to give effect to the intent of the parties. The best evidence of the parties' intent is the contract's plain language.").

It is undisputed that Massey and Fanning intended to enter into, created, signed, and adhered to (albeit inconsistently), a written contract that outlined their rights and restrictions associated with their mutual control and use of Parcel 1. The Agreement specifically stated that Massey and Fanning "desire to continue their partnership regarding the real estate and trailer park located [on Parcel 1] and desire to reduce their agreement to writing." Among other conditions, the Agreement restricted the conveyance of the real estate without the other's consent, restricted any changes to the property without consent, and purported to equally divide all rents, profits, liabilities, maintenance, taxes, and insurance regarding the property. Both parties complied with certain aspects of the Agreement by sharing the costs of taxes and insurance on the property and payments for common spaces. Both Massey and Fanning repeatedly relied on the Agreement's terms to support their arguments against and for partition, entitlement to rents and profits received, and restriction of the sale of the property without the other's consent. Additionally, in his proposed contract to rent the Shop and sell his one-half interest in Parcel 1, Fanning specifically noted that the sale of his interest in the property was subject to the terms of the Agreement. These actions reinforce the Agreement's validity and the existence of a partnership.

While section 33-41-210 requires that co-owners carry on business for profit, it does not necessarily require that partnerships must equally share profits. Although the sharing of profits and losses is traditionally used as prima facie evidence of the

*existence* of a partnership, it is not a dispositive requirement when the intent of the parties to create a partnership by an express agreement can be ascertained through the plain language and substance of the agreement.  *See* S.C. Code Ann. § 33-41-220(4) (1976) ("The receipt by a person of a share of the profits of a business is prima facie evidence of the existence of a partnership.").  Therefore, we find the parties created a partnership and are bound to it until proper dissolution. *See Moore v. Moore*, 360 S.C. 241, 261, 599 S.E.2d 467, 477 (Ct. App. 2004) ("[W]hen all of the conditions exist which by law create a legal relationship, the effects flowing legally from such relation follow whether the parties foresaw and intended them or not." (alteration in original) (quoting *Stephens*, 213 S.C. at 531, 50 S.E.2d at 579)).

We therefore affirm the master's holding that Massey and Fanning each own an undivided one-half interest of Parcel 1, but we reverse the finding that a partnership never existed.  We remand this case back to the master to resolve the requested dissolution of the partnership and the partition of Parcel 1 post-dissolution and to order an accounting of common expenses, rents, and profits.

**CONCLUSION**

Based on the foregoing analysis, the master's order is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[2]

**WILLIAMS, C.J., and THOMAS, J., and LOCKEMY, A.J., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.