17852

Joseph A. FEW, Respondent, v. Benjamin F. FEW, Appellant

(122 S. E. (2d) 829)

322

*Francis R. Fant, Esq.,* of Anderson, *for Appellant,*

*Messrs. Watkins, Vandiver, Freeman & Kirven,* of Anderson, *for Respondent,*

November 16, 1961.

Moss, Justice.

Joseph A. Few, the respondent herein, did, on September 23, 1960, institute this action against Benjamin F. Few, the appellant herein. The complaint sets out two causes of action. The first cause of action is for damages in the sum of Ten Thousand & 00/100 ($10,000.00) Dollars for the alleged breach of an agreement arising out of the division of the property of the estate of I. P. Few. It appears that the respondent and appellant are sons of the late I. P. Few and beneficiaries under his last will and testament. This appeal is not concerned with the first cause of action.

The complaint, in the second cause of action, alleges that in 1949, a herd of Black Angus cattle, then owned by the appellant and Marion Few and located on their farm at Kingstree, South Carolina, was transported to the farm of the respondent in Anderson County which was better suited for cattle raising, because upon said farm was abundant pasturage. It is alleged that the respondent was to supervise, keep and care for the cattle and additions to the herd, and furnish pasturage therefor, and he was to receive for such services a one-half interest in the herd and its increase. It is further alleged that pursuant to this agreement that the respondent supervised, kept and cared for this herd of cattle and the increase and acquisitons thereto until about May 1, 1960. It is alleged that until 1953 the respondent paid all of the expenses of supervising, keeping and caring for the herd of cattle, including the expenses of breeding, feeding, labor, fertilizer, seed and veterinary service, as well as furnishing all the grazing lands, with necessary fencing and buildings incident to such cattle raising. It is further alleged that the purpose of the agreement between the respondent and the appellant was "the breeding, raising, buying and selling of cattle for profit."

The complaint further alleges that in April, 1953, the parties to this action purchased a farm known as the "Brown Farm", each paying one-half of the purchase price, and such farm was to be used as additional land in the cattle operation. Because of the increase in the expense of the cattle operation, the agreement between the parties was amended by providing that the appellant was to pay one-half of the expenses of the cattle operation and the respondent was to continue to have an undivided one-half interest in all of the cattle in his care and he was to supervise, keep and care for such increased herd. It was further provided that the respondent was to develop and cultivate the Brown farm for use in the cattle operation. It is then alleged that from 1953 until 1958 the respondent furnished all of the money for the expense of the cattle operation, and after the end of each year the appellant would reimburse him for one-half of such expenses. This agreement continued until about the first of the year 1958, when the appellant, with the consent of the respondent, purchased a "new herd", and the respondent was to continue the supervision and care of the old and new herds, and for such service was to receive a ten per cent interest in the new herd, with an annual salary of Ten Thousand & 00/100 ($10,000.00) Dollars for tending both herds.

It is further alleged that the appellant was to pay all expenses of the cattle operation, beginning January 1, 1958.

The complaint further alleges that on or about April 9, 1960, about eighty-five head of cattle, being a part of the old and a part of the new herd, was sold by the appellant for Forty-four Thousand One Hundred Nineteen and 63/100 ($44,119.63) Dollars, and the appellant has failed, after repeated demands, to pay the plaintiff any part of his share of such sale. It is further alleged that on April 28, 1960, the appellant surreptitiously removed many of the cattle from both herds from respondent's possession to the State of Virginia, and, despite demands of the respondent he has refused to disclose the whereabouts of said cattle or to pay to the respondent any part of his share or interest therein. It is

then alleged that the appellant sold the remaining cattle of both herds and has refused to pay to the respondent his interest therein, or to pay the balance of his agreed salary. It is then alleged that the respondent, relying on the appellant's promise to pay the expense of the cattle operation during 1958-1960, spent a considerable sum in improving some lands separately owned by the appellant, and has not paid an additional amount for money expended for the cattle operation since the first of 1960, which the appellant had agreed to pay. The complaint demands actual and punitive damages in the sum of Eighty Thousand and 00/100 ($80,-000.00) Dollars for an alleged fraudulent breach of the foregoing contracts.

The appellant, by his answer, sets forth five separate defenses to the second cause of action stated in the complaint. In the second, third, fourth and fifth defenses, the appellant asserts, offsets and counterclaims against the respondent.

In the first defense, the appellant alleges the removal from Kingstree, South Carolina, to the farm of the respondent at Anderson of eight Black Angus cattle, along with some milk cows, under an agreement whereby the respondent was to keep and care for said cattle and any additions thereto, and as compensation for his services he was to receive a percentage of the net proceeds from the sales of said cattle, provided, at the time of such sales he was still employed in the supervision and care of the appellant's cattle and farm. It is then alleged that for the compensation heretofore stated, the respondent supervised, kept and cared for appellant's herd of cattle until 1953, at which time the "Brown Farm" was purchased and paid for by the respondent and appellant in equal proportions as tenants in common and used in the cattle operation. It is further alleged that for:

"improvements to the buildings and silos and driveways on said farm aggregating a cost of Sixteen Thousand Five Hundred Sixty-seven and 02/100 ($16,567.02) Dollars were paid for by this Defendant and fertilizing and liming

expenses of Thirty-three Thousand Four Hundred Thirty-three and 34/100 ($33,433.34) Dollars and weed killer expense of Five Hundred Fifty-two and no/100 ($552.00) Dollars were paid for by this Defendant on this jointly owned farm and in addition to the foregoing, Defendant paid one-half (½) of the expenses of the cattle operation and during the period from 1953 to 1958, Plaintiff advanced funds as were necessary for the expenses of said operation and at the end of each year Defendant reimbursed Plaintiff for his portion of said expenses. The Plaintiff, however, has not reimbursed Defendant for any portion of the expenditures of Sixteen Thousand Five Hundred Sixty-seven and 02/100 ($16,567.02) Dollars, Thirty-three Thousand Four Hundred Thirty-three and 34/100 ($33,433.34) Dollars and Five Hundred Fifty-two and no/100 ($552.00) Dollars."

It is further alleged in this defense that in 1957 and 1958 the appellant purchased and paid for a substantial number of cattle, which were the exclusive property of the appellant, and that he agreed to pay to respondent, beginning with the year 1958, a salary of Ten Thousand and 00/100 ($10,000-.00) Dollars per year and one-tenth of the net proceeds from the sales of the cattle or additions thereto, provided, that at the time of the sales of such cattle the respondent was still employed by the appellant in the supervision of appellant's cattle and farm, and to pay fifty per cent of the net proceeds of the sales of the old herd of cattle or additions thereto, provided, that at the time of such sales the respondent was still employed as aforesaid. In this defense the appellant further asserts that on or about April 28, 1960, there was a sale of certain of the cattle from the old and new herds and the respondent was entitled to a part of the proceeds of such sale, and that the appellant tendered to the respondent the amount to which he was entitled and he refused to accept such. The appellant then alleges that the respondent demanded a salary of Thirty-five Thousand and 00/100 ($35,000.00) Dollars per year for his work as manager of the cattle operation; and

that the appellant notified the respondent that effective May 1, 1960, he was no longer in the employ of the appellant. The appellant then admits, as is alleged in the complaint, that a public sale of the remaining cattle was held at the Brown farm on July 23, 1960, over the protest of the re- respondent, and that the respondent was not entitled to any of the proceeds of said sale because the cattle belonged ex- clusively to the appellant and the respondent was not in his employ at the time of said sale. In this defense the ap- pellant admits the performance of some services by the re- spondent from January 1, 1960 to May 1, 1960, but denies that the services were worth the sum alleged by the respond- ent. It is also admitted that the respondent did plant some grass and stolons on a tract of land owned by the appellant but denies that the material used and the services rendered were reasonably worth the sum demanded by the respond- ent.

For a second defense the appellant asserts that the re- spondent and appellant own the "Brown Farm" as tenants in common and that he had expended thereon the total sum of Fifty Thousand Five Hundred Fifty-two and 36/100 ($50,- 552.36) Dollars for repairs, permanent improvements upon the buildings and for establishing permanent pastures there- on, all of which greatly increased the value of the said prop- erty, and the respondent is indebted to the appellant for one-half of said expenditure, or Twenty-five Thousand Two Hundred Sixty-one and 18/100 ($25,261.18) Dollars.

For a third defense and also by way of offset and counter- claim it is alleged that numerous pieces of farm equipment were acquired by the respondent and the appellant and that such equipment was last in the possession of the respondent and he has not accounted to the appellant for said equipment. It is asserted that the appellant is entitled to a full account- ing therefor.

For a fourth defense, by way of offset and counterclaim, the appellant alleges that from time to time the respondent

sold certain of appellant's cattle and has not paid appellant therefor and he is entitled to a full accounting therefor.

For a fifth defense, by way of offset and counterclaim, it is alleged that the respondent received from the appellant two horses and certain milk cows, the property of the appellant, and that the respondent planted certain crops during the year 1960 upon lands jointly owned by the parties, and the appellant has received no accounting from the respondent for the said horses, milk cows or crops, and he is entitled to an accounting therefor.

The respondent interposed a demurrer to the second defense which set up an offset and a counterclaim on the ground that the allegations thereof were not sufficient to constitute a defense, offset or counterclaim, in that, no cause of action to recover for improvements can be asserted by the improving tenant in common except in an action, in equity, for the partition of the premises in question. The respondent also demurred to the third and fifth defenses which pleaded an offset and counterclaim, on the grounds (1) that it is not alleged that the appellant has asked for or demanded an acounting for the things therein mentioned and that such demand has been refused; (2) it is not alleged that the articles and things therein mentioned have been sold or disposed of by the respondent or converted to his own use; and (3) that an accounting will not lie for the division between co-owners of articles of personal property in the possession of the adverse party but only for the possession of the same, or part of the same, by replevin, or claim and delivery, or for the share of the proceeds of same after sale or conversion. The respondent also moved to strike from the first defense the allegations thereof as to the amount expended by the appellant for improvements to the buildings, silos and driveways, and the amount expended for fertilizer, liming and weed killer expenses, on the ground that the cost of the aforesaid improvements can not be set up as a defense to the respondent's cause of action but can be recovered, if at all, only in a suit for partition of the premises in question. On

February 21, 1961, the trial Judge sustained the respondent's demurrer on the grounds stated. He likewise, struck out of the first defense so much thereof as alleged the expenditure of Sixteen Thousand Five Hundred Sixty-seven and 02/100 ($16,567.02) Dollars as having been expended for improvements to the buildings, silos and driveways on said farm. Timely notice of intention to appeal to this Court from the order of the trial Judge was given by the appellant.

The questions raised by this appeal are as follows: (1) Did the trial Judge commit error in sustaining the demurrer of the respondent and granting an order striking certain allegations of the defenses interposed by the appellant as an offset or counterclaim on the ground that no cause of action to recover for improvements can be asserted by a tenant in common except in an action for the partition of the premises in question? (2) Did the trial Judge commit error in sustaining the demurrer of the respondent to the appellant's third and fifth defenses, which set forth an offset and counterclaim, on the ground that it was not alleged that he had demanded an accounting for things mentioned in said defenses and that such demand had been refused, and on the further ground that it had not been alleged that the articles mentioned therein had been sold or disposed of or converted by the respondent, it being asserted that an accounting will not lie for the division between co-owners of articles of personal property in the possession of one of them, but only for a share of the same after sale or conversion.

It is alleged by the respondent that he has been damaged by the "above described breaches of agreement and accompanying fraudulent acts in flagrant and willful disregard of" his rights and interest. An action for the fraudulent breach of contract is not converted into an action in tort because the motive prompting the breach and alleged acts accompanying such were characterized as "fraudulent", "flagrant" and "willful". These words do not change the structural essence of the cause of action. It remains as a cause of action on contract. *Shaw v. Great Atlantic & Pacific*

*Tea Co.,* 189 S. C. 437, 1 S. E. (2d) 499. *Green v. Indus-trial Life & Health Ins. Co. et al.,* 199 S. C. 262, 18 S. E. (2d) 873. *Kinard v. United Ins. Co.,* 237 S. C. 266, 116 S. E. (2d) 906.

The respondent alleges in his complaint that the herd of cattle increased to the extent that in April, 1953, more land was required to carry on the business of raising cattle. It was at this time the parties purchased the Brown farm, each paying one-half of the purchase price, and such farm was "to be used as additional land in the cattle operation." The respondent affirmatively alleges that the appellant "was to pay one-half of the expenses of the cattle operation", and the respondent "was to develop and cultivate the Brown farm for use in the cattle operation". It is then alleged that until 1958 the respondent furnished all the money for the expenses of the cattle operation and after the end of each year the appellant would reimburse him for one-half of such expenses. The complaint then alleges that the respondent developed the Brown farm, together with other tracts separately owned by the respondent and the appellant, all of which were used for the cattle operation. It is then alleged that the jointly owned Brown farm and the separately acquired lands of the appellant were substantially increased, both in value and appearance, to the great benefit of the appellant. The appellant, by way of answer to this allegation of the complaint, asserts that he expended for the improvement of the said Brown farm the sum of more than Fifty Thousand and 00/100 ($50,000.00) Dollars, and asks for the reimbursement for one-half of such expenditure from the respondent. The respondent alleges that the appellant agreed to pay all expenses of the cattle operation beginning January 1, 1958, and despite the appellant's agreement so to do, he has failed and refused to pay certain expenses incurred by the respondent from the first of 1960 until May 1, 1960, for supplies, materials, veterinary, maintenance, feed, repairs and the like, amounting to more than Five Thousand and 00/100 ($5,-000.00) Dollars. The appellant admits that he has refused

to pay these expenses for the reason that he questions the accuracy thereof and whether such expenses were incurred in connection with the appellant's herd of cattle, and demands an accounting relative thereto.

The appellant takes the position that he was engaged with the respondent in a joint adventure in the business of breeding, buying, raising and selling of cattle for profit. It is also suggested by the appellant that the respondent and appellant were partners in the cattle business. It is unnecessary for us to determine whether the relationship of the parties was that of a joint adventure or a partnership because the rule of law applicable thereto is the same. In the case of *Welling et al. v. Crosland et al.,* 129 S. C. 127, 123 S. E. 776, 781, this Court said:

"Practically the only difference between a 'joint adventure' and a 'partnership' is that a partnership is ordinarily for the transaction of a general business of a particular kind, while a joint adventure relates to a single transaction. A joint adventure was unknown to the common law, being regarded as within the principles governing partnerships; it is still governed by the same rules of law. 23 Cyc. 453." *Gordon v. Rothberg et al.,* 213 S. C. 492, 50 S. E. (2d) 202, and *Stephens v. Stephens,* 213 S. C. 525, 50 S. E. (2d) 577.

The action by the respondent was one at law to recover damages for a breach of a contract. The appellant was required to plead all of his defenses whether legal or equitable, in the said action. *Frederick et al. v. Chapman et al.,* 144 S. C. 137, 142 S. E. 247. It is, likewise, settled that equitable defenses can be set up in a law case. *Bell v. Mackey et al.,* 191 S. C. 105, 3 S. E. (2d) 816. It is also provided in Section 10-652 of the 1952 Code of Laws that an answer must contain a general or specific denial of each material allegation of the complaint controverted by the defendant and a statement of any new matter constituting a defense or counterclaim. It is provided in Section 10-703 of the 1952 Code that the counterclaim mentioned in Section

10-652 of the Code must be one existing in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action and arising out of one of the following causes of action: "(1) A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action; or (2) In an action arising on contract, any other cause of action arising also on contract and existing at the commencement of the action."

There can be no doubt in this case that the counterclaim of the appellant arises out of the contract or transaction set forth in the complaint as the foundation of the respondent's claim and is connected with the subject of the action. It is a rule in this State that statutes governing counterclaims should be given liberal construction, and that where facts alleged in a counterclaim arise out of the same transaction set forth in the complaint they are permitted to cover a wider scope and are not as limited as where the plaintiff's action is based on a specific contract. *Griffin v. Scott et al.,* 203 S. C. 430, 27 S. E. (2d) 570.

We think it was proper for the appellant to interpose a counterclaim against the respondent unless he is precluded from so doing and limited to the recovery for expenditures made for permanent improvements upon the property owned by the parties as tenants in common in an action for the partition of the premises involved.

It has been held in this State that where one co-tenant has made permanent and valuable improvements on the property, a Court of Equity, as an incident to partition may allow compensation for such permanent improvements. *Peets v. Wright,* 117 S. C. 409, 109 S. E. 129; *Vaughn v. Langford,* 81 S. C. 282, 62 S. E. 316, and numerous other cases. Even though the right of reimbursement to the improving tenant against the other tenant can be adjusted and awarded in a partition action, none of the cases hold that this is the sole and exclusive remedy. It has been held that a co-tenant's

right to contribution is ordinarily enforced in equity in a proceeding instituted by the co-tenant to obtain contribution, or in an action for partition, or for an accounting, in which the right to contribution is made the basis of an offset or of an allowance. 48 A. L. R. (2d), at page 1338.

In the instant case, admittedly the parties to this action are tenants in common. The purpose of placing improvements upon the lands in question was in furtherance of the agreement between the parties to breed, raise, buy and sell cattle for profit. After the Brown farm had been purchased the complaint alleges that "beginning in 1953, the defendant was to pay one-half of the expenses of the cattle operation." The counterclaim alleges the payment in full by the appellant of various amounts for liming, fertilizing and seeding the land. This was a necessary expenditure according to the agreement between the parties in connection with the cattle business, and the expenditures for such liming, fertilizing and seeding commenced in 1953 and continued through March, 1960. The complaint of the respondent alleges that the appellant was to pay only one-half of the expenses of the cattle operation and the only reasonable inference to be drawn from the allegations of the complaint is that the respondent was to pay the other one-half of such expenses. The counterclaim also alleges expenditures by the appellant for repairs to the buildings, barns, silo and fencing, and for tree surgery, electric wiring, and for weed killer. These expenditures were certainly beneficial, useful and necessary to both parties in furtherance of their contract for the breeding, raising, buying and selling of cattle. It would be inequitable to disallow the appellant's claim for such improvements, and the allowance of same would result in no inequity to the respondent. The amount of contribution, if any, that the appellant would be entitled to from the respondent must abide the trial of this cause.

We should point out that the respondent seeks, in his action, to recover from the appellant "for supplies, materials, veterinary, maintenance, feed, repairs and the like." The ap-

pellant seeks to recover from the respondent a contribution for one-half of his expenditures for "repairs" to buildings, barns, silo, fencing, driveways, and for liming, fertilizing and seeding. It would bring about an anomalous situation to permit the respondent to recover for the items asserted by him in this action and to deny the appellant a similar right of recovery.

In the case of *Mills v. Carrier et al.,* 30 S. C. 617, 9 S. E. 350, it was held that an indebtedness growing out of an unsettled partnership is admissible as a setoff in a mortgage foreclosure. It was further held that an answer alleging unsettled transactions and asking an accounting, and stating that on such accounting a balance would be found due to the defendant for which judgment is prayed, sufficiently pleads such counterclaim, although a partnership is not alleged in words. We think the holding in this case is applicable to the situation here and it was proper for the appellant to plead a counterclaim and ask for an accounting, even though a partnership is not alleged in words.

We think the trial Judge was in error in sustaining the demurrer of the respondent to the counterclaim interposed by the appellant and in striking so much of the first defense as alleged the expenditure of funds for the improvements to the property in question. He was in error in holding that the appellant could only assert his right to contribution for improvements in an action for the partition of the premises involved.

The appellant asserts error on the part of the trial Judge in sustaining the demurrer to the third and fifth defenses which set up a counterclaim, on the ground that the appellant has not asked for or demanded an accounting for the things therein mentioned and that such demand has been refused.

Section 52-44 of the 1952 Code of Laws of South Carolina, provides that the members of a partnership are accountable as a fiduciary, and Section 52-45 of the Code provides that any partner shall have a right to a

formal account as to partnership affairs if he is wrongfully excluded from the partnership business or possession of its property by his co-partner. A partner is also entitled to an accounting whenever the circumstances render it just and reasonable. Under the cases decided by this Court, the partners are treated as fiduciaries each to the other and characterizes their relationship as one of mutual trust and confidence, imposing upon them the usual trust requirements of loyalty, good faith and fair dealing. *Whitman v. Bowden,* 27 S. C. 53, 2 S. E. 630; *Price v. Middleton,* 75 S. C. 105, 55 S. E. 156; and *Badder v. Saleeby,* 131 S. C. 101, 126 S. E. 438. Since a fiduciary relationship existed between the parties to this action, the rule is that the appellant was not required to make a demand as a condition precedent to asserting, by way of counterclaim or defense, his right to an account. *Cf.* 14 Am. Jur., Co-Tenancy, section 99, at page 165.

The appellant asserts error on the part of the trial Judge in sustaining the demurrer of the respondent to the third and fifth defenses, which set up a counterclaim, on the ground that it is not alleged that the articles and things mentioned have been sold, disposed of or converted to the use of the respondent. The allegation of the third defense is that the respondent had numerous pieces and articles of farm equipment belonging to the respondent and the appellant, and that the respondent has not accounted as he should to the appellant. It was not necessary for the appellant to allege that the respondent had sold or disposed of the articles mentioned in the third defense nor that he had converted the same to his own use. The object of the accounting is to determine the status of the various articles and assets belonging to the parties to this action as tenants in common or as partners. It was proper for the appellant to require the respondent to account for the articles of personalty which he alleges were in the possession of the respondent. It was error for the trial Judge to sustain the demurrer to this defense.

The trial Judge is also charged with error in sustaining the demurrer to the third and fifth defenses on the ground that an accounting will not lie for the division between the co-owners of articles of personal property in the possession of the adverse party but only for the possession of the same, or part of the same, by replevin or claim and delivery, or for a share of the proceeds of the same after sale or conversion.

The allegation of the third defense is that the respondent and appellant owned the farm equipment as tenants in common or as partners. An action in replevin or claim and delivery is not available to the appellant. In 40 Am. Jur., Partnership, para. 178, at page 253, it is stated that the personal property of a partnership is owned, not by the parties individually but by the partnership, and unlike the rule in the case of real property, each partner has an equal right to the possession and control of the joint property. It is likewise said in 40 Am. Jur., Partnership, para. 115, at page 210, that neither party separately owns, or has exclusive right of possession of, any particular articles of partnership property. Nor does any partner own any proportional part of any article of partnership property, but each has dominion over the whole article and over the entire partnership property.

In 14 Am. Jur., Co-Tenancy, para. 77, at page 144, it is said:

"Since each cotenant ordinarily has an equal right to the possession of the common property, it is clear that one co-owner of personalty of an indivisible character, not entitled to its exclusive possession, cannot resort to replevin in order to recover it from another, unless the latter has repudiated the cotenancy and converted the property to his own use. The mere fact that possession may have been obtained by the use of force will not warrant issuance of the writ. * * *"

A tenant in common cannot maintain an action against a co-tenant to recover possession of specific personal property. *Thompson v. Silverthorne,* 142 N.

C. 12, 54 S. E. 782, and *Coulbourn v. Armstrong,* 243 N. C. 663, 91 S. E. (2d) 912.

The appellant asserts by way of his fifth defense and ██ ██ counterclaim that the respondent received into his possession certain livestock belonging to the appellant and also that certain crops were grown by the respondent upon the lands jointly owned by the parties, and that the appellant has received no accounting from the respondent relative to the horses, milk cows or crops, and he alleges that he is entitled to such. Certainly, the appellant was entitled to require the respondent to account for the crops grown during 1960 upon lands jointly owned by the parties. This allegation stated a good defense and counterclaim. The demurrer of the respondent had to be directed to the entire defense or counterclaim. Since the demurrer was not good as to the entire defense and counterclaim, the trial Judge erred in sustaining the same. In the case of *Bryant v. Bryant,* 223 S. C. 489, 76 S. E. (2d) 927, this Court held that a demurrer by a plaintiff, which went only to a portion of one of the defenses contained in the answer, was insufficient, and was properly overruled.

We conclude that the trial Judge was in error in sustaining the demurrer of the respondent and granting his motion to strike certain allegations of the answer.

The order of the trial Judge is reversed and the case remanded for further proceedings in accordance with the views herein expressed.

Reversed.

TAYLOR, C. J., and OXNER, LEGGE and LEWIS, JJ., concur.