23717

SOUTH CAROLINA FEDERAL SAVINGS BANK, Plaintiff v. THORN
TON-CROSBY DEVELOPMENT COMPANY, INC., T.R. Tucker Construction Co., Inc., and Hartford Accident and Indemnity Company, Inc.,
Defendants, of whom Thornton-Crosby Development Company, Inc., is
Respondent, and T.R. Tucker Construction Co., Inc., and Hartford Accident and Indemnity Company, Inc., are Petitioners.

(423 S.E. (2d) 114)

Supreme Court

*J. Jackson Thomas*, of *Stevens, Stevens & Thomas*, Myrtle
Beach, *for respondent Thornton-Crosby Development Co.,
Inc.*

*Joseph F. Singleton,* of *Cross, Singleton, Burroughs & Norton,* Conway, *for petitioner T.R. Tucker Const. Co., Inc.*

*James B. Richardson, Jr.,* of *Svalina, Richardson & Smith,* Columbia, and *O. William Faison* and *Timothy C. Barber,* both of *Faison, Fletcher, Barber & Gillespie,* Durham, N.C., *for petitioner Hartford Acc. & Indem. Co.*

Heard June 13, 1991.

Decided Sept. 21, 1992.

FINNEY, Justice:

We granted certiorari to review the decision of the Court of Appeals which affirmed the Master-in-Equity's report awarding judgment for actual damages to Respondent Thornton-Crosby Development Company, Inc. ("Developer") against Petitioners T.R. Tucker Construction Co., Inc. ("Builder") and Hartford Accident and Indemnity Co., Inc. ("Surety"); granting judgment for actual damages in favor of Respondent South Carolina Federal Savings Bank ("Bank") against the Surety; and dismissing the counterclaims and cross-claims of the Builder and the Surety. *See South Carolina Federal Sav. Bank v. Thornton-Crosby Development Co., Inc.,* 303 S.C. 74, 399 S.E. (2d) 8 (Ct. App. 1990).

In May of 1984, the Builder contracted to construct and complete by December 31, 1984, an ocean-front eighteen-unit condominium in the Garden City area of Horry County, South Carolina, for the Developer. Financing for the project was provided by stockholder loans and a $1,462,500 construction loan from the Bank to be repaid using proceeds from the sale of condominium units. Prior to the loan closing, the Bank required, among other things, project pro forma, performance and payment bonds on the construction contract, and presale of fifty percent of the units. The loan was closed September 5, 1984.

Construction commenced shortly after June 4, 1984, but soon fell behind schedule. There were construction deficiencies and, ultimately, the filing of mechanics liens by subcontractors and suppliers. On August 9, 1985, the Builder entered into an Option Purchase Agreement with the Developer for the Builder to purchase the project. Consideration for the op-

tion was $125,000 and the Builder's agreement to endorse the loan note when came due on September 5, 1985, so that the Bank would renew the note. On November 18, 1985, when the project was incomplete and numerous craftsman deficiencies existed, the Builder abandoned construction and would not return, despite requests by the Surety.

On February 24, 1986, the Bank instituted a foreclosure action against the Developer, the Builder and the Surety. The Builder filed a general denial to the allegations of the complaint. The Developer answered by way of general denial and cross-claimed against the Builder and the Surety for breach of contract. The Builder and the Surety filed an answer in which they denied the allegations of the cross-claim and counter-claimed against the Developer alleging breach of contract. The Surety impleaded Clary Architects, Inc., the Developer's architect. The foreclosure action was severed and in November of 1986, the Bank obtained a deficiency judgment against the Developer and the Builder in the amount of $394,742.80.

The contract claims were referred with finality to the Master, who awarded judgment as follows: (1) to the Developer, actual damages against the Builder and the Surety in the amount of $1,029,055.80; (2) to the Bank, actual damages against the Surety in the amount of $142,594.62; (3) dismissal with prejudice of the counter-claims and cross-claims of the Builder and the Surety; and (4) to the Developer, the Bank and Clary Architects, Inc., their costs. Included in the Developer's damage award were (a) a deficiency judgment of $394,742.80, and (b) lost profits of $382,600.00. The builder and the Surety appealed; and the Court of Appeals affirmed the Master's order in *South Carolina Federal Sav. Bank v. Thornton-Crosby Development Co., Inc.*, 303 S.C. 74, 399 S.E. (2d) 8 (Ct. App. 1990) review followed.

The Builder alleges that the Court of Appeals failed to apply the correct factors to determine whether lost profits are recoverable by a new business as set out in *Drews Co. v. Ledwith-Wolfe Assoc.*, 296 S.C. 207, 371 S.E. (2d) 532 (1988).

In *Drews, supra*, this Court set out a three-prong test to determine whether lost profits may be recovered in a breach of contract action.

First, profits must have been prevented or lost as a natu-

ral consequence of the breach of contract. [Citations omitted.] The second requirement is foreseeability; a breaching party is liable for those damages including lost profits, which may reasonably supposed to have been within the contemplation of the parties at the time the contract was made as a probable result of the breach of it. [Citations omitted.] The crucial requirements in lost profits determinations is that they be established with reasonable certainly, for recovery cannot be had for profits that are conjectural or speculative. [Citation omitted.]

*Drews* at 213, 371 S.E. (2d) at 535-36.

While the Court of Appeals cited *Drews*, it appears that they applied their two-part test to determine whether lost profits are recoverable. The two-part test used by the Court of Appeals has been overruled by *Drews, supra.* Thus, we granted certiorari and review the Master's order in light of *Drews, supra.*

A breach of contract seeking money damages is an action at law. *Moore v. Crowley & Associates, Inc.*, 254 S.C. 170, 174 S.E. (2d) 340 (1970). "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings. The rule is the same with or without a reference." *Townes Assoc., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E. (2d) 773, 775 (1976).

Master found that had the Builder performed, the Developer would have realized sufficient money from the sale of condominiums to repay all indebtedness, and, further to make a profit. There was testimony that the units would have sold out by June or July of 1985 had the Builder performed. Further, the Master reviewed a complete accounting of expenses, pre-completion sales, and anticipated sales. Thus, the Master's finding that profits were prevented or lost as a natural consequence of the breach of contract is supported by the evidence: and the first prong of *Drews* is satisfied.

In his Conclusions of Law, the Master held that the damages, including lost profits, were in the contemplation of the parties at the time the contract was made.

The record reveals that at the time of contracting, the Builder knew that the Developer intended to obtain a construction loan on the project and repay the loan with proceeds from the sale of condominium units. Thus, Builder knew or should have known at the time of the contract that failure to perform in a timely manner would result in lost profits. Thus, the findings by the Master meet the second prong of *Drews*.

The final and crucial requirement of *Drews, supra,* is that the lost profits "be established with reasonable certainty, for recovery cannot be had for profits that are conjectural or speculative." *Drews* at 213, 371 S.E. (2d) at 535-36. The Master found that the project was one-half pre-sold by September 5, 1984. The testimony supports the Master's findings that had the Builder timely performed, all of the units would have been sold by June or July, 1985 with Developer realizing a profit. As noted *supra*, the Master reviewed the expenses, pre-sold sales, and anticipated sales. From the evidence, the master correctly determined that the lost profits were established with reasonable certainty.

The Master did not have the benefit of *Drews, supra,* as the case was published after the Master's order. His findings of facts and conclusions of law, however, clearly show that the Master based his decision on evidence which supports all of the Drews factors. Thus, we AFFIRM.

HARWELL, C.J., CHANDLER and TOAL, JJ., and GEORGE T. GREGORY, JR., Acting Associate Justice, concur.