599 S.E.2d 467

**Craig MOORE, Respondent,**

v.

**Robert MOORE, Appellant.**

**No. 3840.**

Court of Appeals of South Carolina.

Submitted June 8, 2004.

Decided June 28, 2004.

---

244

248

Bert Glenn Utsey, III, of Walterboro, for Appellant.

Peter Brandt Shelbourne, of Summerville, for Respondent.

ANDERSON, J.:

In this appeal from a breach of fiduciary duty cause of action, Appellant Robert Moore argues the trial court erred in admitting evidence and in submitting the claim to the jury. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

Appellant, the sole proprietor of Moore's Heating and Air, received the majority of his business through subcontracting work for Greene's Heating and Air Conditioning, a business run by John Greene. Two to three months after beginning work as Moore's Heating and Air, Appellant entered into an arrangement with his brother, Respondent Craig Moore, whereby Appellant subcontracted a portion of his work to Respondent. Under this informal arrangement, Appellant paid Respondent based on a percentage of business revenue, though Respondent contributed no capital or assets to the

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

business. As explained by Respondent, "I was self employed from Bobby, and Bobby was self employed from [Greene]."

The brothers conducted business in this manner for some time until Greene, having decided to retire, approached Appellant about selling Greene's Heating and Air Conditioning to Appellant for $100,000.00. After discussing the possibility of a purchase with Greene, Appellant suggested to Respondent that they become equal partners in the business, each contributing fifty percent toward the business's purchase price. Respondent agreed to the proposal, and the two planned to later draft a partnership agreement or form a limited liability company.

The brothers executed a contract with Greene whereby they agreed to purchase Greene's Heating and Air Conditioning for $100,000.00. The brothers then spoke with a bank officer about obtaining a joint loan for the purchase amount. The loan application was not completed at this first meeting with the bank officer. To obtain the loan, the brothers had Paul Walker, an accountant, draft a pro forma balance sheet projecting future profits of the planned business. According to Respondent, the brothers agreed they would each be paid a salary of $800.00 per week. From their projected salaries, Appellant and Respondent would each be responsible for paying back their half of the $100,000.00 loan.

Three days after the bank visit, the plans of Appellant and Respondent went awry when Appellant became frustrated with Respondent's decision to leave for a weekend trip to Myrtle Beach while a job deadline loomed nigh. Upon Respondent's return, Appellant openly expressed his misgivings, advising Respondent he no longer desired to be equal partners with him. With Respondent present, Appellant telephoned the bank and instructed the loan officer to remove Respondent's name from the loan. Respondent would accept no other arrangement and advised Appellant he would become Appellant's competition. As a result of the disagreement, Respondent discontinued working for Moore's Heating and Air and began operating his own heating and air conditioning business.

Appellant continued with the planned purchase of Greene's Heating and Air Conditioning, individually securing a loan for

$100,000.00 and executing a purchase agreement with Greene. Respondent filed suit against Appellant and Greene, alleging breach of contract and breach of fiduciary duty.

During direct examination of Walker, Respondent sought to introduce the income projection Walker prepared for the brothers' loan acquisition. Appellant objected to the document's admission on the grounds of relevance. The trial court overruled the objection, admitting the income projection as Plaintiff's Exhibit 2. Similarly over Appellant's objection, the trial court permitted Respondent's counsel to question Appellant on cross-examination about Appellant's personal purchases and spending since the acquisition of Greene's Heating and Air Conditioning.

At the close of all evidence, Appellant moved for directed verdict on both the breach of contract and breach of fiduciary duty causes of action. The trial court dismissed Respondent's breach of contract theory but denied Appellant's motion as to the breach of fiduciary duty action. Before the court submitted the breach of fiduciary duty claim to the jury, Appellant requested a jury charge that Respondent had a duty minimize his damages. The court refused to charge the jury as requested.

The jury returned a verdict in favor of Respondent in the amount of $30,000.00 actual damages.

## *LAW/ANALYSIS*

### I.  FIDUCIARY DUTY

A fiduciary relationship is founded on the trust and confidence reposed by one person in the integrity and fidelity of another. *Ellis v. Davidson*, 358 S.C. 509, 519, 595 S.E.2d 817, 822 (Ct.App.2004); *Regions Bank v. Schmauch*, 354 S.C. 648, 670, 582 S.E.2d 432, 444 (Ct.App.2003); *Redwend Ltd. P'ship v. Edwards*, 354 S.C. 459, 476, 581 S.E.2d 496, 505 (Ct.App.2003). A fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence. *Hendricks v. Clemson Univ.*, 353 S.C. 449, 458, 578 S.E.2d 711, 715 (2003); *O'Shea v. Lesser*, 308 S.C. 10, 15, 416 S.E.2d 629, 631 (1992); *SSI Med. Servs., Inc. v. Cox*, 301

S.C. 493, 500, 392 S.E.2d 789, 794 (1990); *Regions Bank,* 354 S.C. at 670, 582 S.E.2d at 444; *Steele v. Victory Sav. Bank,* 295 S.C. 290, 293, 368 S.E.2d 91, 93 (Ct.App.1988). A relationship must be more than casual to equal a fiduciary relationship. *Ellis,* 358 S.C. at 519, 595 S.E.2d at 822; *Regions Bank,* 354 S.C. at 670, 582 S.E.2d at 444; *Steele,* 295 S.C. at 293, 368 S.E.2d at 93.

As a general rule, a fiduciary relationship cannot be created by the unilateral action of one party. *Regions Bank,* 354 S.C. at 670, 582 S.E.2d at 444; *Brown v. Pearson,* 326 S.C. 409, 483 S.E.2d 477 (Ct.App.1997). To establish the existence of a fiduciary relationship, the facts and circumstances must indicate the party reposing trust in another has some foundation for believing the one so entrusted will act not in his own behalf but in the interest of the party so reposing. *Burwell v. South Carolina Nat'l Bank,* 288 S.C. 34, 41, 340 S.E.2d 786, 790 (1986); *Ellis,* 358 S.C. at 509, 595 S.E.2d at 822. The evidence must show the entrusted party actually accepted or induced the confidence placed in him. *Regions Bank,* 354 S.C. at 671, 582 S.E.2d at 444; *State v. Parris,* 353 S.C. 582, 593, 578 S.E.2d 736, 742 (Ct.App.2003); *Brown,* 326 S.C. at 423, 483 S.E.2d at 484.

"Parties in a fiduciary relationship must fully disclose to each other all known information that is significant and material, and when this duty to disclose is triggered, silence may constitute fraud." *Ellie v. Miccichi,* 358 S.C. 78, 100, 594 S.E.2d 485, 497 (quoting *Anthony v. Padmar, Inc.,* 320 S.C. 436, 449, 465 S.E.2d 745, 752 (Ct.App.1995)). Partners are fiduciaries to each other and their relationship is one of mutual trust and confidence, imposing upon them requirements of loyalty, good faith and fair dealing. *Redwend,* 354 S.C. at 475, 581 S.E.2d at 505; *Few v. Few,* 239 S.C. 321, 336, 122 S.E.2d 829, 836 (1961).

The fiduciary relationship of partners is discussed in 59A Am.Jur.2d *Partnership* § 420 (1987):

The courts universally recognize the fiduciary relationship of partners and impose on them obligations of the utmost good faith and integrity in their dealings with one another in partnership affairs. It is a fundamental characteristic of partnership that the partners' relationship is

one of trust and confidence when dealing with each other in partnership matters.

> Partners are held to a standard stricter than the morals of the marketplace, and their fiduciary duties should be broadly construed, connoting not mere honesty but the punctilio of honor most sensitive. In all matters connected with the partnership every partner is bound to act in a manner not to obtain any advantage over his copartner in the partnership affairs by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. A partner cannot act too quickly to protect his own financial position at the expense of his partners, even in the absence of malice.

59A Am.Jur.2d *Partnership* § 420 (1987) (footnotes omitted).

South Carolina case law recognizes the fiduciary duty owed between partners:

> The law holds each member of a partnership to the *highest degree of good faith* in his dealings with reference to any matter which concerns the business of the common engagement, and each partner, being the agent of the firm, must be held to the same accountability as other trustees, in all matters which affect the common interest. The relationship of a partnership is fiduciary in character and imposes on the members the obligation of *refraining from taking any advantage of one another by the slightest misrepresentation or concealment.*

*Lawson,* 312 S.C. at 498–99, 435 S.E.2d at 857 (emphasis added) (citations omitted); *see also Edwards v. Johnson,* 90 S.C. 90, 72 S.E. 638 (1911) (stating that each member of a partnership is held to the highest degree of good faith in his dealings with reference to any matter concerning the business of the common engagement, and each partner, being an agent of the firm, must be held, during the existence of the relation, to the same accountability as other trustees in all matters affecting the common interest).

*Redwend,* 354 S.C. at 476–77, 581 S.E.2d at 505; *accord Kuznik v. Bees Ferry Assocs.,* 342 S.C. 579, 597–98, 538 S.E.2d 15, 24–25 (Ct.App.2000).

Whether a fiduciary relationship exists between two people is an equitable issue for the judge to decide. *Hendricks v. Clemson Univ.*, 353 S.C. 449, 458–59, 578 S.E.2d 711, 715 (2003) (citing *Island Car Wash, Inc. v. Norris*, 292 S.C. 595, 358 S.E.2d 150 (Ct.App.1987)). However, the determination of a breach of a fiduciary relationship can be a question for the jury. *Id.*

## II. DAMAGES/LOST PROFIT

Appellant contends the trial court erred in submitting the breach of fiduciary duty claim to the jury because Respondent failed to prove damages with reasonable certainty. We disagree.

One standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation. In a breach of fiduciary case, the plaintiff is entitled to damages for harm caused by the breach of a fiduciary duty owed to him or her. Damages in an action for breach of a fiduciary duty are those proximately resulting from the wrongful conduct of the defendant.

"Profits" have been defined as "the net pecuniary gain from a transaction, the gross pecuniary gains diminished by the cost of obtaining them." Restatement of Contracts § 331, Comment B (1932); *see Mali v. Odom*, 295 S.C. 78, 367 S.E.2d 166 (Ct.App.1988) (defining "profits" as the net of income over expenditures during a given period).

*Drews Co. v. Ledwith–Wolfe Assocs.*, 296 S.C. 207, 210, 371 S.E.2d 532, 534 (1988).

The case of *Drews Co. v. Ledwith–Wolfe Assocs.* articulates the standard of proof for proving lost profits:

The same standards that have for years governed lost profits awards in South Carolina will apply with equal force to cases where damages are sought for a new business or enterprise. First, profits must have been prevented or lost "as a natural consequence of" the breach of contract.

The second requirement is foreseeability; a breaching party is liable for those damages, including lost profits, "which may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made as a probable result of the breach of it."

The crucial requirement in lost profits determinations is that they be established with reasonable certainty, for recovery cannot be had for profits that are conjectural or speculative. The proof must pass the realm of conjecture, speculation, or opinion not founded on facts, and must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn.

*Drews,* 296 S.C. at 213, 371 S.E.2d at 535–36 (internal citations and quotations omitted); *see Beck v. Clarkson,* 300 S.C. 293, 298, 387 S.E.2d 681, 684 (Ct.App.1989) (citing the factors in *Drews* ).

The requirement to establish lost profits with "reasonable certainty" permits "an inherent flexibility facilitating the just assessment of profits lost to a new business due to contractual breach." *Drews,* 296 S.C. at 214, 371 S.E.2d at 536.

Numerous proof techniques have been discussed and accepted in different factual scenarios. *See e.g, Upjohn v. Rachelle Laboratories, Inc.,* 661 F.2d 1105, 1114 (6th Cir. 1981) (proof of future lost profits based on marketing forecasts by employees specializing in economic forecasting); *Petty v. Weyerhaeuser Co.,* [288 S.C. 349, 342 S.E.2d 611 (App.1986)] *supra* (skating rink's projected revenues compared to those of another arena in a nearby town); *see also Restatement (Second) of Contracts,* § 352, at 146 (1981) (proof of lost profits "may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like."); Note, *supra,* 48 Ohio St. L.J. at 872–3 (means of proving prospective profits include (1) "yardstick" method of comparison with profit performance of business similar in size, nature, and location; (2) comparison with profit history of plaintiff's successor, where applicable; (3) comparison of similar businesses owned by plaintiff himself, and (4) use of economic and financial data and expert testimony).

*Drews,* 296 S.C. at 213–14, 371 S.E.2d at 536.

Proof may be established through expert testimony, economic and financial data, market surveys and analyses,

business records of similar enterprises, comparison with profit performance of businesses similar in size, nature and location, comparison with profit history of plaintiff's successor, comparison of similar businesses owned by plaintiff himself, and use of economic and financial data and expert testimony.

*Global Prot. Corp. v. Halbersberg,* 332 S.C. 149, 158, 503 S.E.2d 483, 487 (citing *Drews,* 296 S.C. at 213–14, 371 S.E.2d at 536). The standard for proving lost profits complies with the general rule for recovery of damages, which mandates that the fact finder determine the amount of damages with reasonable certainty from the evidence. *Minter v. GOCT, Inc.,* 322 S.C. 525, 528, 473 S.E.2d 67, 70 (Ct.App.1996). The amount of damages cannot be left to conjecture, guess, or speculation; however, mathematical certainty is not required. *Id.; see Yadkin Brick Co. v. Materials Recovery Co.,* 339 S.C. 640, 646, 529 S.E.2d 764, 767 (Ct.App.2000) ("The amount of damages need not be proved with mathematical certainty. The evidence, however, should be such that a court or jury can reasonably determine an appropriate amount."); *Minter,* 322 S.C. at 528, 473 S.E.2d at 70 ("While proof of mathematical certainty is not required, the amount of damages cannot be left to conjecture, guess, or speculation."). Case law in South Carolina has defined "reasonable certainty:"

To warrant such recovery, loss of profits must be established with reasonable certainty, for recovery cannot be had for profits that are conjectural or speculative. But it must be borne in mind that since profits are prospective they must, to some extent, be uncertain and problematical, and so, on that account or on account of the difficulties in the way of proof, a person complaining of breach of contract cannot be deprived of all remedy, and uncertainty merely as to the amount of profits that would have been made does not prevent a recovery. The law does not require absolute certainty of data upon which lost profits are to be estimated, but all that is required is such reasonable certainty that damages may not be based wholly upon speculation and conjecture, and it is sufficient if there is a certain standard or fixed method by which profits sought to be recovered may be estimated and determined with a fair degree of accuracy.

*Beck,* 300 S.C. at 298–99, 387 S.E.2d at 684 (quoting *South Carolina Fin. Corp. of Anderson v. West Side Fin. Co.,* 236 S.C. 109, 122–23, 113 S.E.2d 329, 336 (1960)).

■ The fact that the business is new does not prohibit lost profits from being recovered. *Beck,* 300 S.C. at 297–98, 387 S.E.2d at 683. It only is to be considered as a matter of "evidentiary sufficiency rather than an automatic bar to recovery." *Id.; see Drews,* 296 S.C. at 211, 371 S.E.2d at 534 ("Courts are now taking the position that the distinction between established businesses and new ones is a distinction that goes to the weight of the evidence and not a rule that automatically precludes recovery of profits by a new business.") (quoting D. Dobbs, HANDBOOK ON THE LAW OF REMEDIES, § 3.3, at 155 (1973)). Reviewing the factors in *Drews,* the supreme court affirmed the master's findings in *South Carolina Fed. Sav. Bank v. Thornton–Crosby Dev. Co.,* 310 S.C. 232, 423 S.E.2d 114 (1992), where the master awarded the developer of a proposed condominium complex lost profits. The master found that had the builder timely performed, the developer would have realized a profit. *Id.* at 236, 423 S.E.2d at 116. The master correctly determined lost profits were established with reasonable certainty from the pre-sold sales, anticipated sales, and expenses. *Id.* In *Sterling Development Co. v. Collins,* 309 S.C. 237, 421 S.E.2d 402 (1992), the supreme court affirmed the award of lost profits to a real estate purchaser because of the seller's breach of the real estate sale contract. The purchaser planned to develop a shopping center and already had a lease agreement with BiLo. *Id.* at 242, 421 S.E.2d at 405. The court found that but for the seller's breach, the lease agreement between the purchaser and BiLo would still be in effect; and, therefore, the purchaser proved lost profits with reasonable certainty. *Id.*

In *Drews,* our supreme court addressed the standard of proof required in a cause of action for breach of contract where the exclusive measure of damages was lost profit. *Id.* Unlike *Drews,* however, the claim submitted to the jury in the instant case was for breach of fiduciary duty rather than breach of contract. Because a cause of action for breach of fiduciary duty sounds in tort rather than in contract, the two claims are not marked by fungible damage measures. As a consequence, although compensation for the tort may include

lost profit, other measures of damages are also available that are not likewise available in contract. Indeed, the evidence introduced at trial demonstrated Respondent's loss could also be measured by the assets he would have had an interest in but for Appellant's breach and opportunity cost in terms of the projected value of the planned business.

The jury in this case returned a general verdict for Respondent in the amount of $30,000.00. Appellant did not request the trial court to submit a special verdict form to determine whether the actual damages were for lost profit or some other measure. Without a special verdict form, we cannot speculate as to what portion of the award the jury attributed to lost profit as opposed to other tort damages. Accordingly, the trial court committed no error in submitting the claim to the jury.

## III. PROJECTED INCOME STATEMENT

Appellant argues the trial court erred in admitting Plaintiff's Exhibit 2 on the basis the projected income statement was irrelevant to any issue in dispute. Although Appellant's argument to this Court includes assertions the exhibit was "speculative [and] lacked proper foundation," the only basis for the objection offered at trial was to the exhibit's relevance. Accordingly, the exhibit's relevance is the only issue Appellant has preserved for appeal. We disagree.

As a general rule, the admission of evidence is a matter addressed to the sound discretion of the trial court. *Gamble v. Int'l Paper Corp. of South Carolina*, 323 S.C. 367, 373, 474 S.E.2d 438, 441 (1996); *Hofer v. St. Clair*, 298 S.C. 503, 513, 381 S.E.2d 736, 742 (1989); *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 439, 540 S.E.2d 113, 121 (Ct.App.2000). On appeal, therefore, this court will not disturb a trial court's evidentiary rulings absent a clear abuse of discretion. *Hofer; R & G Constr., Inc.*, 343 S.C. at 439, 540 S.E.2d at 121. "For this court to reverse a case based on the admission of evidence, both error and prejudice must be shown." *Stevens v. Allen*, 336 S.C. 439, 448, 520 S.E.2d 625, 629 (Ct.App.1999) (citing *Timmons v. South Carolina Tricentennial Comm'n*, 254 S.C. 378, 175 S.E.2d 805 (1970)). The trial judge has wide discretion in determining

the relevancy of evidence, and his decision to admit or reject evidence will not be reversed on appeal absent an abuse of that discretion. *Hoeffner v. The Citadel,* 311 S.C. 361, 365, 429 S.E.2d 190, 192 (1993); *Davis v. Traylor,* 340 S.C. 150, 155, 530 S.E.2d 385, 387 (Ct.App.2000); *Hawkins v. Pathology Assocs. of Greenville, P.A.,* 330 S.C. 92, 108, 498 S.E.2d 395, 404 (Ct.App.1998).

All that is required for evidence to be relevant is that it have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE; *see Davis,* 340 S.C. at 155, 530 S.E.2d at 387 (quoting Rule 401, SCRE). "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of South Carolina, statutes, these rules, or by other rules promulgated by the Supreme Court of South Carolina. Evidence which is not relevant is not admissible." Rule 402, SCRE; *see Pike v. South Carolina Dep't of Transp.,* 332 S.C. 605, 613, 506 S.E.2d 516, 520 (Ct.App.1998). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. This threshold requirement is satisfied here. First, the projected income statement tended to prove the business's earning potential, a matter relevant to the calculation of damages. Moreover, the exhibit was independently probative in that it tangibly demonstrated the brothers had done more than merely discuss the possibility of a partnership, but had actually begun working together in furtherance of the planned business. Thus, even if speculative, the projected income statement is still admissible as relevant evidence that there was, in fact, a working partnership between the brothers. Accordingly, the trial court did not err in admitting the exhibit into evidence.

## IV. PERSONAL PURCHASES TESTIMONY

Appellant contends the trial court erred in admitting testimony about personal purchases Appellant made after

purchasing Greene's Heating and Air Conditioning. We disagree.

Because Appellant's business was a sole proprietorship, he and his business were not distinct entities. Appellant's own testimony illustrates his cognizance of the mutual identity:

Q: Now, did Moore Heating and Air file a separate tax return at the end of the year?

A: No.

Q: How did Moore report earnings for taxes-Moore's Heating and Air?

A: I was the business.

As a sole proprietor, just as his personal income and the business's income are the same, Appellant's personal expenditures are probative as to his business's financial viability. When Appellant twice testified his business lost money during the first year of operation, Respondent's inquiry into Appellant's personal purchases over the same period was a legitimate method of rebutting Appellant's assertion. As such, nothing indicates the trial court abused its discretion in allowing the questions.

### V. PARTNERSHIP

Appellant avers the trial court erred in submitting the case to the jury on the breach of fiduciary duty claim because evidence of a partnership was lacking and because Respondent abandoned the proposed partnership.

In ruling on motions for directed verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motion. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 518 S.E.2d 591, 597 (1999); *Strange v. S.C. Dep't of Highways & Pub. Transp.*, 314 S.C. 427, 429–30, 445 S.E.2d 439, 440 (1994). "When the evidence yields only one inference, a directed verdict in favor of the moving party is proper." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 476, 514 S.E.2d 126, 130 (1999) (citation omitted). "If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury." *Mullinax v. J.M. Brown Amusement*

*Co.,* 333 S.C. 89, 92, 508 S.E.2d 848, 849 (1998) (citation omitted); *Strange,* 314 S.C. at 429–30, 445 S.E.2d at 440. "In deciding whether to grant or deny a directed verdict motion, the trial court is concerned only with the existence or non-existence of evidence." *Sims v. Giles,* 343 S.C. 708, 714, 541 S.E.2d 857, 861 (Ct.App.2001) (citations omitted). This Court can only reverse the trial court when there is no evidence to support the ruling below. *Swinton Creek Nursery,* 334 S.C. at 477, 514 S.E.2d at 130. On appeal, we will uphold a trial court's denial of a directed verdict motion if supported by any evidence. *Strange* 314 S.C. at 430, 445 S.E.2d at 440.

A partnership is an association of two or more persons to carry on as co-owners a business for profit. S.C.Code Ann. § 33–41–210 (Supp.2003); *see Wyman v. Davis,* 223 S.C. 172, 174, 74 S.E.2d 694, 698 (1953); *Halbersberg v. Berry,* 302 S.C. 97, 101, 394 S.E.2d 7, 10 (Ct.App.1990); *Beck v. Clarkson,* 300 S.C. 293, 301, 387 S.E.2d 681, 685 (Ct.App.1989); *Buffkin v. Strickland,* 280 S.C. 343, 345, 312 S.E.2d 579, 580 (Ct.App.1984). "[W]here the parties to a contract, by their acts, conduct, or agreement show that they intended to combine their property, labor, skill and experience, or some of these elements on one side, and some on the other, to carry on, as principals or co-owners, a common business, trade, or venture as a commercial enterprise, and to share, either expressly or by implication, the profits and losses or expenses that may be incurred, such parties are partners." *Stephens v. Stephens,* 213 S.C. 525, 532, 50 S.E.2d 577, 580 (1948). "A partnership agreement may rest in parol. It may be implied and without express intention." *Wyman,* 223 S.C. at 174, 74 S.E.2d at 698; *Halbersberg,* 302 S.C. at 101, 394 S.E.2d at 10; *accord Beck,* 300 S.C. at 301, 387 S.E.2d at 685; *Buffkin,* 280 S.C. at 345, 312 S.E.2d at 580. A partnership may be found to exist by implication from the parties' conduct. *Corley v. Ott,* 326 S.C. 89, 92, 485 S.E.2d 97, 99 (1997); *Stephens,* 213 S.C. at 532, 50 S.E.2d at 580. "One of the most important tests as to the existence of a partnership is the intention of the parties." *Stephens,* 213 S.C. at 530–31, 50 S.E.2d at 579. To determine whether a partnership exists, the following tests are used: (1) the sharing of profits and losses; (2) community of interest in capital or property; and (3) community of interest in control and management. *Wy-*

*man,* 223 S.C. at 181, 74 S.E.2d at 699; *Stephens,* 213 S.C. at 531, 50 S.E.2d at 579; *Halbersberg,* 302 S.C. at 101, 394 S.E.2d at 10. "[W]hen all of the conditions exist which by law create a legal relationship, the effects flowing legally from such relation follow whether the parties foresaw and intended them or not." *Stephens,* 213 S.C. at 531, 50 S.E.2d at 579.

In the case at bar, Respondent introduced evidence showing the intention of the brothers was to conduct business as partners. On cross-examination, Appellant admitted he and Respondent agreed to enter into a partnership:

Q: Do you agree you all verbally agreed to a partnership?

A: Yes.

Q: Mr. Moore, looking at page 32 [of deposition], what you read from before, the question on line 25 is, so prior to him—that's Craig—returning from Myrtle Beach, and prior to the time you signed this, you all were thinking fifty-fifty, and the answer on page 33 is what?

A: Yes. I was thinking fifty-fifty.

Moreover, the brothers also conducted themselves as partners: together they signed the original purchase agreement with Greene, together they inquired with a bank about funding the enterprise, and together they enlisted the services of an accountant to draw up financial documentation for the partnership. Thus, because there was not an absence of evidence demonstrating the existence of a partnership, the trial court correctly denied Appellant's motion for directed verdict and submitted the claim to the jury.

## VI. JURY CHARGE

Appellant next contends the trial court erred in refusing to charge the jury that Respondent had the burden of showing he had mitigated damages. We disagree.

"When reviewing a jury charge for alleged error, an appellate court must consider the charge as a whole in light of the evidence and issues presented at trial." *Welch v. Epstein,* 342 S.C. 279, 311, 536 S.E.2d 408, 425 (Ct.App.2000); *accord Burroughs v. Worsham,* 352 S.C. 382, 392, 574 S.E.2d 215, 220 (Ct.App.2002). "A trial court must charge the current and correct law." *Burroughs,* 352 S.C. at 392, 574 S.E.2d

at 220. A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law. *In re McCracken,* 346 S.C. 87, 94, 551 S.E.2d 235, 239 (2001); *Keaton ex rel. Foster v. Greenville Hosp. Sys.,* 334 S.C. 488, 495–96, 514 S.E.2d 570–74 (1999); *Burroughs,* 352 S.C. at 392, 574 S.E.2d at 220. Appellant argues Respondent should have shown how much money Respondent was making in his present business to establish Respondent's loss. His failure to do so, Appellant argues, was fatal to his claim because he had not demonstrated he attempted to minimize damages. "Although the law requires an injured party to do those things a prudent person would do to avoid damages that are reasonably avoidable, it does not require him to exert himself unreasonably or to incur substantial expense to avoid damages." *Chastain v. Owens Carolina, Inc.,* 310 S.C. 417, 420, 426 S.E.2d 834, 835 (Ct.App.1993); *accord Tri–Continental Leasing Corp. v. Stevens, Stevens & Thomas, P.A.,* 287 S.C. 338, 342, 338 S.E.2d 343, 346 (Ct.App. 1985). "Moreover, the party who claims damages should have been minimized has the burden of proving they could reasonably have been avoided or reduced." *Chastain,* 310 S.C. at 420, 426 S.E.2d at 835; *accord Adams v. Orr,* 260 S.C. 92, 98, 194 S.E.2d 232, 235 (1973); *Darby v. Waterboggan of Myrtle Beach, Inc.,* 288 S.C. 579, 586, 344 S.E.2d 153, 156 (1986); *Hyde v. S. Grocery Stores,* 197 S.C. 263, 278, 15 S.E.2d 353, 360 (1941); *Tri–Continental Leasing Corp.,* 287 S.C. at 342, 338 S.E.2d at 346. Such a contention, however, stands at odds with the rule that defendants have the burden of proving a plaintiff's damages could have been avoided, reduced, or minimized. Thus, because the proposed instruction would have inappropriately shifted the burden from Appellant to Respondent, the trial court correctly refused to charge the jury as requested.

**AFFIRMED.**

HUFF and KITTREDGE, JJ., concur.